[No. 13699-2-I.  Division One.  March 31, 1986.]

WESTERN STUD WELDING, INC., ET AL, *Respondents,* V.
OMARK INDUSTRIES, INC., *Defendant,* JOSEPH
QUALL, ET AL, *Appellants.*

*Bell & Ingram, P.S., Bruce R. Bell,* and *William F. Ingram,* for appellants.

*Gary W. East,* for respondents.

SCHOLFIELD, C.J.—Appellants Joseph and Jean Quall appeal the trial court's denial of their motion for award of attorney fees. We reverse.

## FACTS

Appellant Joseph Quall was an officer, director, and shareholder in Western Stud Welding, Inc. (WSW), along with respondent John Simonseth. After lengthy negotiations, Quall and Simonseth entered into a contract for the sale of Quall's shares in WSW to Simonseth on September 30, 1981. As a result of this contract, Simonseth became the controlling shareholder in WSW. The contract also prohibited Quall from competing with WSW within WSW's marketing region.

WSW was a distributorship for Omark Industries, d/b/a KSM Fastening Systems. On October 27, 1981, approximately 1 month after Quall and Simonseth completed their buy–out agreement, Omark/KSM terminated the distributorship arrangement with WSW. Later that same year, Omark opened its own outlet and began direct competition with WSW. Simonseth asserts that Quall knew of Omark's impending decision to terminate the distributorship.

Simonseth and WSW filed a lawsuit against both Omark/ KSM and Quall, alleging fraud and misrepresentation, and violations of unfair practices and consumer protection acts against KSM. The complaint also alleged fraud and mis-

representation, breach of fiduciary duty, and interference with contractual relations against Quall.

Simonseth and WSW's prayer for relief against Quall for fraud was as follows:

1. Damages for

    a. Loss of personal income due to Quall's fraud and misrepresentation.

    b. Diminution of WSW's stock due to Quall's fraud and misrepresentation.

    c. Interest expenses and loss of use of funds associated with money paid to Quall for buy–out.

2. Rescission of the stock purchase and buy–out agreement.

Simonseth and WSW also prayed for similar relief due to Quall's breach of fiduciary duty and interference with the contractual relationship between WSW and KSM.

On May 2, 1983, WSW and Simonseth moved for voluntary partial dismissal of their action without prejudice against Quall for the claims of fraud and breach of corporate fiduciary duty. Following Quall's response to the motion, in which Quall reserved all rights, Simonseth moved for a voluntary dismissal *with* prejudice of all causes of action against Quall. In response, Quall moved for attorney's fees, claiming that, as the prevailing party, he was entitled to attorney's fees under the terms of the buy–out contract. The trial court denied Quall's motion for award of attorney's fees.

### PREVAILING PARTY STATUS

■ Under CR 41, WSW took a voluntary dismissal with prejudice. Quall argues that the result of WSW's motion was that final judgment was awarded in Quall's favor. The general rule regarding costs in these circumstances is that the defendant is deemed the prevailing party and entitled to costs. 4 L. Orland, *Wash. Prac.* § 5501, at 240–41 (1983).

In *Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 505 P.2d 790 (1973), the defendant moved for a voluntary nonsuit of its third party complaint. Judgment was entered

on a verdict in favor of the plaintiff, with an award to the third party defendant against the defendant for attorney's fees. The court found that the prevailing party in a lawsuit is that party in whose favor judgment is entered, and stated: "It would seem to follow that, if [a] defendant is awarded costs, he is the prevailing party." *Gold Seal,* at 865.

In the case before the court, WSW took a voluntary nonsuit, making Quall the prevailing party for the purpose of determining his eligibility for attorney's fees.

### ALLOWANCE OF ATTORNEY'S FEES

Courts in Washington have consistently refused to award attorney's fees as part of the costs of litigation in the absence of a contract, statute, or recognized ground of equity. *See Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976). With regard to contract actions, RCW 4.84.330 provides:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.
>
> Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977. Any provision in any such contract or lease which provides for a waiver of attorney's fees is void.
>
> As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

In the case before the court, Simonseth and Quall entered into a Purchase and Sale Agreement concerning Quall's shares in WSW on September 30, 1981. The matter of attorney's fees is addressed in two different articles of the agreement. Article 9, entitled, "Venue, Jurisdiction and Attorney's Fees", states:

In the event of a dispute between the parties hereto, jurisdiction shall be the State of Washington, venue shall be in the Snohomish County Superior Court and the prevailing party shall be entitled to reasonable attorney's fees and cost [*sic*] .

Article 11 of the agreement deals with a noncompetition restrictive covenant. Subsection 11.11 states:

In the event of any action to enforce the terms of this Agreement, the prevailing party will be entitled to recover, in addition to all other damages, attorney's fees and costs of suit.

Quall argues that the purchase and sale contract that he entered into with Simonseth provided for attorney's fees "[i]n the event of a dispute between the parties [thereto]". Quall contends that WSW's complaint prayed for relief in the form of damages and also asked for rescission of the contract. In response, WSW argues that its allegations of breach of fiduciary duty and tortious interference are unrelated to the contract. WSW further argues that despite the appearance of the word "rescission" in the complaint, its action against Quall was couched in tort because it "had obviously chosen and elected to sue for damages". Brief of Respondent, at 8.

## A. Rescission

Washington courts have determined in appropriate cases that actions for rescission and actions for damages are "on the contract." In *Woodruff v. McClellan,* 95 Wn.2d 394, 622 P.2d 1268 (1980), purchasers of a house under an earnest money agreement sought specific performance after the seller notified them that their offer was terminated. The earnest money agreement provided that the prevailing party in an action to enforce the contract would receive reasonable attorney's fees. The trial court dismissed the case on the basis that the plaintiffs had no right to relief and awarded attorney's fees to the defendants. The Court of Appeals reversed the award of attorney's fees, reasoning that because the trial court found that the defendants had properly rescinded their offer, the attorney's fee provision

in the contract was no longer in effect.

The Supreme Court reversed the Court of Appeals and determined that

> [r]escission can only occur when there is a mutual consent to rescind the contract, or a demand to rescind by one side with acquiescence by the other, a material breach by one party with a claim of rescission by the other or other circumstances not material here.

*Woodruff*, at 397. Thus, the court held that in the absence of a mutual decision to rescind a contract, a clause entitling the prevailing party to attorney's fees remains in effect.

In *Hackney v. Sunset Beach Invs.*, 31 Wn. App. 596, 644 P.2d 138 (1982), a purchaser sought to rescind a real estate contract based on the refusal of one of the sellers to sign a plat, and the court held a rescission action to be "'on the contract'" for purposes of awarding attorney's fees. *Hackney*, at 603.

In *Simonson v. Fendell*, 34 Wn. App. 324, 662 P.2d 54 (1983), *rev'd on other grounds*, 101 Wn.2d 88, 675 P.2d 1218 (1984), the court granted Fendell rescission and inferentially approved rescission as an action on the contract by denying an award of attorney's fees to Fendell on the ground he had not complied with RAP 18.1.

### B. Damages

In *Stott v. Cervantes*, 23 Wn. App. 346, 595 P.2d 563 (1979), contract purchasers of realty sought either rescission or damages due to misrepresentations as to the condition of the real estate. The rescission claim was abandoned, and plaintiff pursued successfully his claim for damages. Award of attorney's fees to plaintiff, by implication, amounts to a holding that an action for damages is an action on a contract.

The Court of Appeals construed the phrase "on a contract" contained in RCW 4.84.330 in *Herzog Aluminum, Inc. v. General Am. Window Corp.*, 39 Wn. App. 188, 692 P.2d 867 (1984). In that case, a supplier sought damages for lost profits resulting from the cancellation of a purchase

order. The action was successfully defended by proving the absence of an enforceable contract. The question arose concerning whether a contractual provision for attorney's fees could be utilized if no contract in fact existed.

The court determined that the parameters of the statutory language are as follows:

> [W]e conclude that the broad language "[i]n any action on a contract" found in RCW 4.84.330 encompasses any action in which it is alleged that a person is liable on a contract.

*Herzog,* at 197. *See also Reynolds Metals Co. v. Alperson,* 25 Cal. 3d 124, 128, 599 P.2d 83, 85, 158 Cal. Rptr. 1 (1979). In *Herzog,* the court also noted that remedial statutes providing for unilateral attorney's fees should be liberally construed to provide for attorney's fees to either party.

The contract between Quall and Simonseth provided for attorney's fees to the prevailing party "[i]n the event of a dispute between the parties hereto". The lawsuit included causes of action for tortious interference with a contractual relationship and for breach of fiduciary duty, both of which have no relationship to the stock purchase and sale agreement. However, the complaint also contained contract–related allegations and prayers, including alleged fraud during the negotiation of the agreement, a prayer for rescission of the contract, and damages related to the decreased value of stock purchased from Quall.

The contract entered into by Simonseth and Quall is central to this dispute. Without the stock purchase and sale agreement, Simonseth would not be in the position of bearing the resulting financial loss from the discontinuation of the KSM distributorship. The contract cannot be overlooked in the analysis of these circumstances.

This lawsuit arose out of the stock sale agreement. The broad interpretation of the "on a contract" language of RCW 4.84.330 dictates the result that Quall is entitled to attorney's fees accrued in defending this lawsuit.

We hold that Quall is properly entitled to an award of reasonable attorney's fees incurred at trial and remand this

case to the trial court for determination of the dollar amount of those fees. Additionally, because Quall has prevailed on appeal and complied with RAP 18.1, he is entitled to an award of reasonable costs and attorney's fees incurred in this appeal, which we allow in the sum of $4,735.

SWANSON and WILLIAMS, JJ., concur.